
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 10, 2017

## STATE OF TENNESSEE v. STEPHANIE LYNN FERGUSON

**Appeal from the Criminal Court for Davidson County**
No. 2015-B-930    Monte Watkins, Judge

————————————————————

## No. M2016-01123-CCA-R3-CD

————————————————————

The Defendant, Stephanie Lynn Ferguson, pleaded guilty to two counts of aggravated vehicular homicide and one count of vehicular assault in the Criminal Court for Davidson County. Following a sentencing hearing, the trial court imposed an effective sentence of twenty-six years in the Department of Correction. On appeal, the Defendant contends that her effective sentence does not comport with the fundamental purposes and principles of sentencing. Specifically, she contends that the sentence imposed was not the "least severe measure necessary," that the trial court ignored applicable mitigating factors, and that the court improperly determined she was a dangerous offender. Upon review, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Elaine Heard, Nashville, Tennessee, for the appellant, Stephanie Lynn Ferguson.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Kyle Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual and Procedural Background

This case arises from a multi-vehicle crash in which a truck driven by the Defendant crashed into the back of a car occupied by Willie Nichols and Aaron Hall,

forcing their car into the back of another vehicle and resulting in Mr. Nichols' and Mr. Hall's deaths. Based on the incident, the Davidson County Grand Jury indicted the Defendant for the following offenses:

| Count | Offense | Victim |
|-------|---------|--------|
| 1 | Vehicular Homicide | Willie Nichols |
| 2 | Aggravated Vehicular Homicide | Willie Nichols |
| 3 | Reckless Vehicular Homicide | Willie Nichols |
| 4 | Vehicular Homicide | Aaron Hall |
| 5 | Aggravated Vehicular Homicide | Aaron Hall |
| 6 | Reckless Aggravated Homicide | Aaron Hall |
| 7 | Reckless Aggravated Assault | Mistie Roberts |
| 8 | Reckless Aggravated Assault | Terrio Williams |
| 9 | Reckless Aggravated Assault | Coty Lavender |
| 10 | Reckless Aggravated Assault | Nichole Lavender |
| 11 | Vehicular Assault | Ashley Morrison |
| 12 | Driving on a Revoked License | N/A |
| 13 | Possession of a Controlled Substance | N/A |
| 14 | Possession of Drug Paraphernalia | N/A |
| 15 | Filing a False Report | N/A |

On March 24, 2016, the Defendant pleaded guilty to aggravated vehicular homicide in Counts 2 and 5 and vehicular assault in Count 11, and the remaining counts were dismissed. At the guilty plea submission hearing, the State offered the following factual basis for the Defendant's plea:

> [T]he facts are that on Thursday, the 22nd of January, 2015 at approximately 18 minutes after 11 a.m., Central and North Precinct officers responded to a motor vehicle crash, which occurred on Jefferson Street at 3rd Avenue North here in Davidson County.
>
> This crash involved four vehicles. The first vehicle was a 2006 Toyota Tundra, which was driven by [the Defendant]; the second was a 2001 Cadillac Deville, which was driven by Mr. Willie Nichols; the third was a 2008 Ford Focus, which was driven by Coty Lavender, the fourth was a 2008 Pontiac Grand Prix, which was driven by Mistie Roberts.

The investigation revealed that the Toyota collided with the Cadillac, which started a chain reaction, pushing the Cadillac into the Ford and the Ford into the Pontiac. The driver of the Pontiac and her passenger, Mr. Terrio Williams, were transported to Centennial Hospital with non[-]life threatening injur[i]es. The driver of the Ford and her passenger, Ms. Nichole Lavender, were transported to St. Thomas Midtown with non[-]life threatening injuries. However, Mr. Nichols and his passenger, Mr. Aaron Hall, were transported to Vanderbilt Medical Center with life threatening injuries. [The Defendant] and her passenger, Ms. Ashley Morrison, were transported to Vanderbilt Medical Center where they were in critical and stable [condition]. Mr. Nichols and Mr. Hall were pronounced deceased upon arrival at the hospital.

The Fatal Team Unit was dispatched to conduct an investigation. They discovered a syringe at the accident. Officer Steele conducted interviews of [the Defendant] and Ms. Morrison. Officer Steele observed track marks on the left arm near the hand of [the Defendant].

[The Defendant] stated that she was not the driver of the vehicle but a . . . "dude named John" was driving. Officer Steele interviewed Ms. Morrison, and she advised that only she and [the Defendant] were in the vehicle, and Ms. Morrison said that she had not been driving. . . . She verified who the driver was.

Officers removed the air bags from the vehicle. They obtained a sample of [the Defendant's] DNA and compared that against the air bags. They also obtained a search warrant for her DNA to compare against what was found on the syringe. The . . . evidence obtained during the search warrants was taken to the TBI and reported that the DNA profile obtained from the driver's side air bag was consistent with a mixture of three individuals, with the major contributor being [the Defendant]. They reported that the DNA profile obtained from the needle on the syringe was consistent with a mixture of at least two individuals, and the major contributor matched [the Defendant]. The TBI advised that the fluid inside the syringe showed that it contained cocaine.

TBI also analyzed the blood drawn from [the Defendant] and . . . it revealed the presence of Xanax, Ecgonice, Methyl Ester and Benzoylecgonine, which are cocaine metabolites, and Levamisole, which is an additive in cocaine.

[The Defendant's] driver's license was revoked at the time in that just prior to this crash, she had ple[]d guilty in General Sessions Court in this county . . . on January 22nd, [20]15, to DUI.  She previously had ple[]d guilty . . . in this county on March 25th, 2014[,] to DUI and was [s]till on that probation at the time of this crash.

At the Defendant's subsequent sentencing hearing, Officer Kevin Coleman with the Metro Nashville Police Department testified that he worked as a crash reconstructionist with the police department's fatal crash team.  Officer Coleman stated that around 11:18 a.m. on January 22, 2015, police dispatch received a call regarding a crash involving four vehicles at the intersection of Third and Jefferson Street.  All of the vehicles' occupants were transported to area hospitals following the crash.  However, Officer Coleman was notified that the two victims from the Cadillac Deville—Willie Nichols and Aaron Hall—had been pronounced deceased at the hospital and that the occupants of the Toyota Tundra were in critical condition.  Another officer informed Officer Coleman that the suspected driver of the Toyota Tundra—the Defendant— reported that a man named "John" had been driving the truck at the time of the crash. However, Ashley Morrison—the other occupant of the Toyota Tundra—told officers that only she and the Defendant had been inside the truck.  Officer Coleman testified that a driver and a passenger in both of the remaining two vehicles were also injured in the wreck.

Officer Coleman testified that, during his investigation of the scene of the crash, he removed the driver's side air bag from the truck and had DNA samples taken from the Defendant, and he sent this evidence to the Tennessee Bureau of Investigation ("TBI") crime lab.  Officer Coleman testified that testing of the evidence indicated that the Defendant had been driving the Toyota Tundra at the time of the crash when the air bags were deployed.  Officer Coleman stated that, at the scene of the crash, he found a syringe on the ground outside of the truck and that another officer observed "fresh track marks" on the Defendant's left arm while she was in the hospital.  Officer Coleman collected the syringe as evidence, and subsequent TBI testing found that the syringe contained cocaine and the Defendant's DNA.  Additionally, Officer Coleman testified that investigators seized blood drawn from the Defendant at the hospital and that an analysis showed that the Defendant had Xanax and cocaine metabolites in her blood stream at the time of the blood draw.

Jeneshia Harris testified that she was Mr. Hall's daughter.  She read a prepared statement, in which she explained that the morning of the crash she had car trouble and had called Mr. Hall, who "stopped what he was doing and . . . drove [her] to work."  She described how she and other family members had suffered following the loss of her father and stated that adjusting to life without him had been "a real struggle."

- 4 -

Sherica Nichols and Rico Nichols, the children of Mr. Nichols, read prepared statements to the court. Sherica[1] explained that Mr. Nichols had been married to her mother for thirty-two years at the time of his death. She described the pain caused to her family by the loss of her father and stated that Mr. Nichols had been her "motivator and [her] friend." Rico explained that he was Mr. Nichols's youngest son and Mr. Hall's godson. He described the devastating impact his father's death had on him and his family and stated that the Defendant's "freedom may need to be taken away."

Tamara Weeks, the Defendant's mother, testified that the wreck had convinced the Defendant to "turn her life around." Ms. Weeks stated that the Defendant had taken responsibility for her actions and had acknowledged making "bad choices in her life[.]" Ms. Weeks testified that, while incarcerated, the Defendant had taken part in every class available to her in the jail and that the Defendant had plans to get her cosmetology license upon release. Ms. Weeks believed that the Defendant needed outpatient rehabilitation for her addictions and stated that, if the Defendant was released, Ms. Weeks would allow the Defendant to live at her home where the Defendant's children, ages five and ten, were currently living. On cross-examination, Ms. Weeks acknowledged that the Defendant had pled guilty to second offense DUI on the morning of the wreck. Additionally, she agreed that the Defendant had several misdemeanor convictions in previous years and that the Defendant had lived with her for part of that time. She stated that she had encouraged the Defendant to attend rehab earlier, but the Defendant had never entered a program.

The Defendant testified that she had struggled with substance abuse for many years leading up to the crash. She stated that she had been assessed for inpatient treatment at one facility, but she had not qualified for the program. The Defendant admitted that she had a "bad record," consisting of numerous prior misdemeanor convictions but no felonies. The Defendant testified that she had "partied" the night before the crash, using cocaine until about 2:00 a.m. or 3:00 a.m. the morning of the wreck. She stated that she also had Xanax in her system, which she had been prescribed. The Defendant testified that she appeared in court on the morning of the wreck and that, after court, she drove to a store in Madison. She explained that the wreck occurred as she was driving to Melton Bonding Company.

The Defendant stated that she took full responsibility for the series of decisions that she made leading up to the crash, and she apologized to the victims' family members. The Defendant said that she had no memory of the wreck and did not recall

---

[1] Because several witnesses share a common surname, we refer to these witnesses by their first name. We intend no disrespect.

telling officers that the driver of the truck had been an individual named "John." The Defendant testified that she had participated in several programs during her incarceration and prior to sentencing, including substance abuse, anger management, and parenting classes. She stated that she intended to obtain a cosmetology license upon her release from jail. The Defendant asked that the trial court give her a "second chance" to lead a better life.

On cross-examination, the Defendant admitted that she began abusing heroin in 2013, using three to four doses of heroin a day. Additionally, she admitted that she began taking cocaine in 2014 but that the amounts she took varied. The Defendant stated that she did not tell the doctor who prescribed her Xanax that she used cocaine and heroin. The Defendant testified that she never sought outpatient treatment for her drug abuse and that she went for an assessment at an inpatient treatment center because it was a condition of probation. The Defendant acknowledged that she had driven previously with her children in the car after having taken heroin "hours before." However, she claimed that she had been careful to make sure that the heroin was out of her system before driving. The Defendant agreed that she had five prior probation violations and that she had been sentenced to probation for multiple prior convictions.

At the conclusion of the hearing, the trial court stated that it had considered the presentence report, evidence from the sentencing hearing, the principles of sentencing, the arguments of counsel, and the nature of the Defendant's conduct. The trial court found that the Defendant had a total of twenty-three prior misdemeanor convictions for offenses that she committed between the ages of eighteen and twenty-nine and that "nothing seemed to change her from continuing to do the kinds of things that she did to get arrested[.]" The trial court noted that, prior to the instant offenses, the Defendant took heroin several times a day and drove with her young children in the car. Moreover, the Defendant used cocaine mere hours before appearing in court on the day of the crash, and the Defendant drove that day even though she knew it was illegal for her to do so. Regarding enhancement factors, the trial court found that the Defendant had a previous history of criminal convictions and criminal behavior; the offense involved more than one victim; the Defendant had previously failed to comply with the conditions of a sentence involving release into the community; the Defendant had no hesitation in committing a crime when the risk to human life was high; and the Defendant was on probation at the time of the offense. As a mitigating factor, the trial court considered that the Defendant had participated in various classes while in jail; however, the court noted that the Defendant had never actively sought treatment before being arrested on the instant charges.

Next, the trial court found that several factors supported the imposition of consecutive sentencing. Specifically, the trial court found that the Defendant had an

extensive record of criminal activity and that the Defendant had committed the instant offenses while on probation. The trial court also determined that the Defendant was a dangerous offender, that her behavior indicated little to no regard for human life, and that she had no hesitation about committing a crime in which the risk to human life was high. In concluding that the Defendant was a dangerous offender, the trial court stated:

> I don't often find individuals to be dangerous offenders for single acts. But when a person continuously commits violations of the law and continue[s] to go about and disregard any restraints they have on them because of their violations of the law, I think that that makes an individual a dangerous offender. And, in this case, her behavior indicated little or no regard for human life and she had no hesitation about committing a crime in which the risk to human life was high.

The trial court then made additional findings, as required by State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995), that confinement for an extended period of time was necessary to protect society against further criminal conduct of the Defendant and that the aggregate sentence length was reasonably related to the offenses for which the Defendant was convicted. Based on these findings, the trial court sentenced the Defendant to twenty-two years each for Counts 2 and 5 and four years for Count 11. The trial court ordered that the Defendant serve the sentences in Counts 2 and 5 concurrently and the sentence in Count 11 consecutively, for a total effective sentence of twenty-six years' incarceration. This timely appeal follows.

## II. Analysis

On appeal, the Defendant contends that the trial court abused its discretion in sentencing her to an effective sentence of twenty-six years in the Department of Correction. The Defendant asserts that the sentence imposed was not the "least severe measure necessary," that the trial court ignored applicable mitigating factors, and that the trial court improperly determined that she was a dangerous offender. The State responds that the trial court properly sentenced the Defendant. We agree with the State.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)). "[A] trial

court's misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from its sentencing determination." Bise, 380 S.W.3d at 709. Moreover, under those circumstances, this court may not disturb the sentence even if it had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210; State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103 (2010).

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2010); Bise, 380 S.W.3d at 706. However, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." Bise, 380 S.W.3d at 705-06. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2010), Sentencing Comm'n Cmts.

In this case, the Defendant pleaded guilty to two counts of aggravated vehicular homicide, a Class A felony, and vehicular assault, a Class D felony. See Tenn. Code Ann. §§ 39-13-218(d) (2014), 39-13-106(b)(1) (Supp. 2013). The trial court determined that the Defendant was a standard Range I offender, and a Range I sentence for a Class A felony is "not less than fifteen nor more than twenty-five years[.]" Tenn. Code Ann. § 40-35-112(a)(1). A Range I sentence for a Class D felony is "not less than two nor more than four years[.]" Tenn. Code Ann. § 40-35-112(a)(4). Because the trial court ordered the Defendant to serve a sentence within Range I, a presumption of reasonableness applies to the trial court's decision, and we will not reverse absent an abuse of discretion.

In setting the length of sentence within the range, the trial court found that one mitigating factor and multiple enhancement factors applied. Specifically, the trial court considered the Defendant's participation in classes at the jail as a mitigating factor. See Tenn. Code Ann. § 40-35-113(13). As to enhancement factors, the trial court considered

that the Defendant had a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range; the offense involved more than one victim; the Defendant had previously failed to comply with the conditions of a sentence involving release into the community; the Defendant had no hesitation in committing a crime when the risk to human life was high; and, at the time the felonies were committed, the Defendant was on probation. See Tenn. Code Ann. § 40-35-114(1), (3), (8), (10), and (13)(C). On appeal, the Defendant does not dispute the trial court's reliance on these factors, and our review of the record supports the trial court's application of the factors. The record shows that the Defendant was previously convicted of twenty-three misdemeanors, including multiple convictions for DUI, driving on a revoked license, and possession of drugs. Additionally, the Defendant admitted to a history of illegal drug use, that she used cocaine the night before the offenses, and that she sometimes drove after using drugs. The Defendant admitted that she had five prior probation violations, and the record shows that the Defendant was serving a probationary sentence at the time she committed the instant offenses as she had been placed on probation for second offense DUI mere hours before the wreck.

The Defendant asserts that the trial court should have considered, as additional mitigating evidence, that she had shown remorse and that she had been motivated by a desire to provide for her family and herself because she was "in the act of retrieving her paycheck to support her two minor children" when she committed the offenses. We note, however, that the record establishes that the Defendant was driving to Melton Bonding Company when the wreck occurred, and the Defendant offered no proof that she committed the instant offenses in order to support her children or herself. Moreover, mitigating and enhancement factors are advisory only, and the weight given to those factors is entirely within the trial court's discretion. Bise, 380 S.W.3d at 701; Carter, 254 S.W.3d at 345. The trial court did not abuse its discretion when it sentenced the Defendant to within-range sentences of twenty-two years each for aggravated vehicular homicide and four years for vehicular assault.

The Tennessee Supreme Court has expanded the standard of review in Bise to trial courts' decisions regarding consecutive sentencing. State v. Pollard, 432 S.W.3d 851, 859 (Tenn. 2013). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." Id. at 862 (citing Tenn. R. Crim. P. 32(c)(1); Bise, 380 S.W.3d at 705).

Tennessee Code Annotated section 40-35-115 sets forth seven different situations in which a trial court may impose consecutive sentencing. Specifically, a trial court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b). Before a trial court may impose consecutive sentences on the basis that a defendant is a dangerous offender, the trial court must also find "that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed." Wilkerson, 905 S.W.2d at 939.

In this case, the trial court concluded that several factors supported consecutive sentencing. The trial court found that the Defendant had an extensive record of criminal activity and that the Defendant committed the offenses while on probation. See Tenn. Code Ann. § 40-35-115(b)(2), (6). The record clearly supports the trial court's reliance on these factors. The trial court also found that the Defendant was a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about

committing a crime in which the risk to human life is high.  See id. § 40-35-115(b)(4).  The court then made the additional findings under Wilkerson when addressing the dangerous offender factor.  The Defendant contends that the trial court improperly determined that she was a dangerous offender based on the Defendant's "unwillingness to lead a productive life."[2]  However, even if we agreed with the Defendant's contention, only one statutory factor is necessary to support consecutive sentencing, State v. Mickens, 123 S.W.3d 355, 394 (Tenn. Crim. App. 2003), and the Defendant does not contest the trial court's findings that the Defendant's record of criminal activity was extensive and that the Defendant committed the offenses while on probation.  Here, the trial court properly articulated its reasons for ordering consecutive sentences, and we presume that the sentences are reasonable absent an abuse of discretion.  Pollard, 432 S.W.3d at 862.  The Defendant has not shown an abuse of discretion in the imposition of consecutive sentences, and therefore, she is not entitled to relief on this ground.

### III. Conclusion

For the aforementioned reasons, we affirm the judgments of the trial court.


_____
ROBERT L. HOLLOWAY, JR., JUDGE

---

[2] While addressing the Wilkerson factors, the trial court initially commented that "[c]onfinement for an extended period of time is necessary to protect society from the [D]efendant's unwillingness to lead a productive life."  The trial court then stated that the aggregate sentence was "necessary to protect the public against further criminal conduct by the [D]efendant," which is a proper finding under Wilkerson.

- 11 -